IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL ARCHITECTURAL TRUST
1906 R. Street, NW
Washington, DC 20009

and

STEVEN L. McCLAIN
4541 W Street, NW
Washington, DC 20007

and

JAMES M. KEARNS
1200 14th Street, NW, #910
Washington, DC 20005

    Plaintiffs

v.

GREAT AMERICAN INSURANCE
   COMPANIES
580 Walnut Street
Cincinnati, OH 45202

and

LIGHTHOUSE UNDERWRITERS, LLC
7630 Little River Turnpike
Annandale, VA 22003

    Defendants

CASE NUMBER 1:06CV00650

JUDGE: Richard J. Leon

DECK TYPE: Contract

DATE STAMP: 04/?/2006

## COMPLAINT

Plaintiffs, National Architectural Trust, ("NAT"), Steven L. McClain ("McClain") and James M. Kearns ("Kearns") (collectively "Plaintiffs" or "Insureds") file this Complaint against Great American Insurance Companies ("GAIC") for declaratory relief pursuant to 28 U.S.C. § 2201, and for breach of an insurance contract between Plaintiffs and GAIC, and against

Lighthouse Underwriters, LLC ("Lighthouse") for monetary damages based on negligence, and state:

## PARTIES

1. NAT is a not-for-profit 501(c)(3) charitable organization organized and existing under the laws of the District of Columbia with its principal place of business at 1906 R. Street, NW, in Washington, District of Columbia.

2. Steven L. McClain ("McClain") is an individual residing at 4541 W Street, NW in Washington, District of Columbia. Mr. McClain is a co-founder of NAT, and the Co-President of NAT and serves on NAT's Board of Directors.

3. James M. Kearns ("Kearns") is an individual residing at 1200 14th Street, NW, #910 in Washington, District of Columbia. Mr. Kearns is a co-founder and the Co-President of NAT, and serves on NAT's Board of Directors.

4. GAIC, upon information and belief, is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Ohio.

5. Lighthouse, upon information and belief, is a corporation organized and existing under the laws of the State of Virginia, with its principal place of business in Annandale, Virginia.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). An actual controversy exists, there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. This Court has jurisdiction to award declaratory relief in this case pursuant to 28 U.S.C. § 2201.

8. Venue for this matter is proper in this Court pursuant to 28 U.S.C. § 1391(a) because the relevant insurance policies were effective in the District of Columbia and the Plaintiffs reside in the District of Columbia.

**FACTUAL BACKGROUND**

9. Plaintiffs purchased from GAIC a Non-Profit Organization Executive Protection and Employment Practices Liability Insurance Policy, identified as Policy Number EPP5642213, effective May 22, 2003 to May 22, 2004. Plaintiffs renewed with GAIC the Non-Profit Organization Executive Protection and Employment Practices Liability Insurance Policy for successive periods from May 22, 2004 through May 22, 2005 and May 22, 2005 through May 22, 2006. Each of these successive policies is hereinafter referred to as "The Policy."

10. The Policy was purchased through Lighthouse, an agent licensed by the State of Virginia to solicit insurance on behalf of GAIC.

11. The Policy obligated GAIC to pay on behalf of any Insured all sums which the Insured shall become legally obligated to pay as Loss resulting from any Claim first made against Plaintiffs and reported to GAIC during the Policy Period for any Wrongful Act. The Policy also obligated GAIC to defend any Claim to which the Policy applies even if the allegations of the Claim are groundless, false, or fraudulent. The Policy defines "Insured" as the Organization (NAT) and all directors, trustees, officers, employees, volunteers or staff thereof. The policy defines "Loss" to mean settlements and judgments and necessary legal fees and expenses incurred in defense of any Claim. The policy defines "Claim" to mean any written demand against an Insured seeking money damages for a Wrongful Act. The Policy defines "Wrongful Act" to mean any actual or alleged error, misstatement, misleading statement, act or omission, neglect or breach of duty committed by NAT or any Insured acting in their capacity

::ODMA\PCDOCS\BA2DOCS1\287118\2

with NAT. Under the Policy, "[i]f during the Policy Period or Discovery Period the Insured first becomes aware of a specific Wrongful Act, and if the Insured gives written notice to the Insurer as soon as practicable of (1) the specific Wrongful Act; (2) the injury or damage which has or may result therefrom; and (3) the circumstances by which the Insured first became aware thereof; then any Claim arising out of such Wrongful Act which is subsequently made against the Insured and not otherwise excluded by the terms of the Policy shall be deemed to have been made at the time the Insurer received such written notice from the Insured." A fair and correct copy of the Policy is attached hereto as Exhibit 1.

12. On April 16, 2004, amid a dispute regarding trademark rights, Paul W. Edmondson, Vice President and General Counsel for National Trust for Historic Preservation ("NTHP") wrote to Kearns to request a meeting. The letter alleged that NAT was infringing upon the trademark rights of NTHP, and indicated that NTHP was "prepared to take action to protect [its] legal interests." A copy of the April 16, 2004 letter from P. Edmondson to J. Kearns is attached hereto as Exhibit 2.

13. Four days later, NAT notified Lighthouse agent Andy Cooley in writing of NTHP's threat of legal action and claim of trademark infringement. The letter, dated April 20, 2004, informed Lighthouse of NTHP's April 16 letter and noted that NAT "thought it prudent to inform [Lighthouse] of the potential for legal action." A copy of the April 20, 2004 letter from V. McCormick to A. Cooley is attached hereto as Exhibit 3. In April 2004, Lighthouse was an agent licensed by the State of Virginia to solicit insurance on behalf of GAIC and accordingly any notice provided to Lighthouse constituted notice to GAIC.

14. In January 2005, NTHP initiated a Cancellation proceeding against NAT before the United States Patent and Trademark Office. In the Cancellation proceeding, NTHP requests

that NAT's trademark registration of the name "National Architectural Trust" be cancelled based on NTHP's prior registration of the names "National Trust for Historic Preservation" and "National Trust for Historic Preservation and Design."

15. On or about November 8, 2005, NTHP filed a Complaint against NAT, McClain, and Kearns in the United States District Court for the Southern District of New York (hereinafter the "NTHP Complaint"). The action sought damages from Plaintiffs for alleged (1) violations of 15 U.S.C. § 1125(a)(1), (2) violations of New York General Business Law § 360-1, (3) violations of New York General Business Law §§ 349 and 350, and (4) unfair competition and misappropriation. A copy the NTHP's Complaint is attached hereto as Exhibit 4.

16. In the First Cause of Action of the NTHP Complaint, it is alleged that Plaintiffs violated 15 U.S.C. § 1125(a)(1) because the use of the registered name "National Architectural Trust" has caused irreparable injury to NTHP.

17. In the Second Cause of Action of the NTHP Complaint, it is alleged that Plaintiffs violated N.Y. Gen. Bus. Law § 369-1 because their conduct has "attracted significant negative publicity" that is "likely to injure and tarnish NTHP's business reputation and to dilute the distinctive quality of [its trademarks]."

18. In the Third Cause of Action of the NTHP Complaint, it is alleged that Plaintiffs violated N.Y. Gen. Bus. Law §§ 349 and 350 because their conduct has caused NTHP to suffer a loss of control over its own reputation and has caused the confusion of one or more persons who dealt with NAT out of a mistaken belief that they were dealing with NTHP.

19. In the Fourth Cause of Action of the NTHP Complaint, it is alleged that Plaintiffs engaged in unfair competition and misappropriation under New York law by acting with deliberate, bad faith intent to mislead the residents of New York.

20. On November 14, 2005, Plaintiffs notified GAIC of the NTHP Complaint and requested that GAIC defend and indemnify Plaintiffs against the NTHP Complaint.

21. On January 4, 2006, GAIC notified NAT that it would decline coverage based on Section VII.A. of the Policy requiring Plaintiffs to provide notice of any Claim as soon as practicable. Specifically, GAIC asserts that Plaintiffs should have provided notice of the Claim at the time NTHP initiated the Cancellation proceeding, or at the time NAT became aware of NTHP concerns. A copy of the January 4, 2006 letter from GAIC to NAT declining coverage is attached hereto as Exhibit 5.

## COUNT I--DECLARATORY JUDGMENT
### (against GAIC)

22. The allegations set forth in paragraphs 1 through 21 are incorporated herein by reference.

23. The allegations against Plaintiffs in the NTHP Complaint seek damages resulting from a Claim first made against Plaintiffs and reported to GAIC during the effective period of the Policy. Moreover, the Complaint seeks damages concerning an alleged Wrongful Act that NAT first became aware of in April 2004, and about which NAT promptly notified Lighthouse and GAIC in writing in April 2004. The Claim seeks damages because of alleged errors, misstatements, misleading statements, acts or omissions, neglect or breach of duties committed by NAT and/or McClain and Kearns acting in their capacity with NAT. Thus, the allegations in the NTHP Complaint fall within the scope of the insuring agreement in the Policy.

24. The notice provision upon which GAIC relies does not allow GAIC to avoid its contractual obligations. Plaintiffs substantially and materially complied with the notice provision of the Policy by alerting Lighthouse and GAIC of the potential for legal action in April 2004 and promptly forwarding the NTHP Complaint to GAIC. Plaintiffs' notice of NTHP's

threat of legal action to Lighthouse, GAIC's agent, on April 20, 2004 constituted notice to GAIC of an alleged Wrongful Act pursuant to applicable policy provisions, statutory and common law. Specifically, notice of a claim or potential claim to Lighthouse, an agent licensed by the State of Virginia to solicit insurance on behalf of GAIC, constitutes notice to GAIC pursuant to Virginia Code § 38.2-1801(A).

25. In breach of its contractual obligation, GAIC has failed and/or refused, and continues to refuse, to provide Plaintiffs with a defense against the NTHP Complaint. GAIC is contractually obligated to defend Plaintiffs against the NTHP Complaint.

26. An actual and immediate controversy exists between Plaintiffs and GAIC with respect to GAIC's duties and obligations under the Policy in that Plaintiffs contend, and GAIC denies, that GAIC is obligated to defend Plaintiffs against the NTHP Complaint. Plaintiffs are entitled to have their rights and the obligations of GAIC arising from the Policy determined by this Court under 28 U.S.C. § 2201. There is a bona fide, actual, present practical need for the declaration. The declaration deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

WHEREFORE, Plaintiffs respectfully request that this Court declare that GAIC is obligated to provide Plaintiffs with a defense against the NTHP Complaint, and that GAIC is obligated to reimburse Plaintiffs for all amounts that Plaintiffs have paid to defend themselves against the NTHP Complaint, and all amounts that Plaintiffs have incurred to obtain a declaration that GAIC is obligated to provide Plaintiffs with a defense against the NTHP Complaint.

## COUNT II--BREACH OF CONTRACT
## (against GAIC)

27.    The allegations set forth in paragraphs 1 through 26 are incorporated herein by reference.

28.    The allegations against Plaintiffs in the NTHP Complaint seek damages resulting from a Claim first made against Plaintiffs and reported to GAIC during the effective period of the Policy. Moreover, the Complaint seeks damages concerning an alleged Wrongful Act that NAT first became aware of in April 2004, and about which NAT promptly notified Lighthouse and GAIC in writing in April 2004. The Claim seeks damages because of alleged errors, misstatements, misleading statements, acts or omissions, neglect or breach of duties committed by NAT and/or McClain and Kearns acting in their capacity with NAT. Thus, the allegations in the NTHP Complaint fall within the scope of the insuring agreement in the Policy.

29.    The notice provision upon which GAIC relies does not allow GAIC to avoid its contractual obligations. Plaintiffs substantially and materially complied with the notice provision of the Policy by alerting Lighthouse and GAIC of the potential for legal action and promptly forwarding the NTHP Complaint to GAIC. Moreover, Plaintiffs notice of NTHP's threat of legal action to Lighthouse, GAIC's agent, on April 20, 2004 constituted notice to GAIC of an alleged Wrongful Act pursuant to applicable policy provisions, statutory and common law. Specifically, notice of a claim or potential claim to Lighthouse, an agent licensed by the State of Virginia to solicit insurance on behalf of GAIC, constitutes notice to GAIC pursuant to Virginia Code § 38.2-1801(A).

30.    In breach of its contractual obligation, GAIC has failed and/or refused, and continues to refuse, to provide Plaintiffs with a defense against the NTHP Complaint. GAIC is contractually obligated to defend Plaintiffs against the NTHP Complaint.

::ODMA\PCDOCS\BA2DOCS1\287118\2

31. As a direct and proximate result of GAIC's breach of its contractual obligation, Plaintiffs have sustained damages in the form of the costs and expenses they have incurred to defend themselves against the NTHP Complaint. GAIC is liable to Plaintiffs for the defense costs and expenses incurred to date, and for any amount yet to be incurred, but which will be incurred because of GAIC's continued failure to honor its contractual obligation to defend Plaintiffs against the NTHP Complaint.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor for all damages that Plaintiffs sustain as a consequence of GAIC's failure to honor its obligations under the Policy.

## COUNT III—DECLARATORY JUDGMENT
### (against GAIC)

32. The allegations set forth in paragraphs 1 through 31 are incorporated herein by reference.

33. This Count is plead in the alternative to Counts I and II and is applicable only to the extent that Plaintiffs McClain and Kearns are not entitled to relief under Counts I and II.

34. The allegations against Plaintiffs McClain and Kearns in the NTHP Complaint seek damages resulting from a Claim first made against McClain and Kearns when the Complaint was served, which was during the Policy Period presently in effect. Moreover, that Claim seeks damages because of alleged errors, misstatements, misleading statements, acts or omissions, neglect or breach of duties committed by McClain and Kearns acting in their capacity for NAT. Thus, the allegations against McClain and Kearns fall within the scope of the insuring agreement in the Policy.

35. The notice provision upon which GAIC relies does not allow GAIC to avoid its contractual obligations. Plaintiffs McClain and Kearns substantially and materially complied with the notice provisions of the Policy by promptly forwarding the NTHP Complaint to GAIC.

36. In breach of its contractual obligation, GAIC has failed and/or refused, and continues to refuse, to provide Plaintiffs McClain and Kearns with a defense against the NTHP Complaint. GAIC is contractually obligated to defend Plaintiffs McClain and Kearns against the NTHP Complaint.

37. An actual and immediate controversy exists between Plaintiffs McClain and Kearns and GAIC with respect to GAIC's duties and obligations under the Policy in that McClain and Kearns contend, and GAIC denies, that GAIC is obligated to defend Plaintiffs against the NTHP Complaint. Plaintiffs are entitled to have their rights and the obligations of GAIC arising from the Policy determined by this Court under 28 U.S.C. § 2201. There is a bona fide, actual, present practical need for the declaration. The declaration deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

WHEREFORE, Plaintiffs McClain and Kearns respectfully request that this Court declare that GAIC is obligated to provide Plaintiffs with a defense against the NTHP Complaint, and that GAIC is obligated to reimburse Plaintiffs for all amounts that Plaintiffs have paid to defend themselves against the NTHP Complaint, and all amounts that Plaintiffs have incurred to obtain a declaration that GAIC is obligated to provide Plaintiffs with a defense against the NTHP Complaint.

### COUNT IV BREACH OF CONTRACT
### (against GAIC)

38. The allegations set forth in paragraphs 1 through 37 are incorporated herein by reference.

39. This Count is plead in the alternative to Counts I and II and is applicable only to the extent that Plaintiffs McClain and Kearns are not entitled to relief under Counts I and II.

40. The allegations against Plaintiffs McClain and Kearns in the NTHP Complaint seek damages resulting from a Claim first made against McClain and Kearns and reported to GAIC during the Policy Period. Moreover, that Claim seeks damages because of alleged errors, misstatements, misleading statements, acts or omissions, neglect or breach of duties committed by McClain and Kearns acting in their capacity for NAT. Thus, the allegations in the NTHP Complaint fall within the scope of the insuring agreement in the Policy.

41. The notice provision upon which GAIC relies does not allow GAIC to avoid its contractual obligations. Plaintiffs McClain and Kearns substantially and materially complied with the notice provisions of the Policy by forwarding the NTHP Complaint to GAIC.

42. In breach of its contractual obligation, GAIC has failed and/or refused, and continues to refuse, to provide Plaintiffs McClain and Kearns with a defense against the NTHP Complaint. GAIC is contractually obligated to defend McClain and Kearns against the NTHP Complaint.

43. As a direct and proximate result of GAIC's breach of its contractual obligation, Plaintiffs McClain and Kearns have sustained damages in the form of the costs and expenses they have incurred to defend against the NTHP Complaint. GAIC is liable to Plaintiffs McClain and Kearns for the defense costs and expenses incurred to date, and for any amount yet to be incurred, but which will be incurred because of GAIC's continued failure to honor its contractual obligation to defend Plaintiffs against the NTHP Complaint.

WHEREFORE, Plaintiffs McClain and Kearns respectfully request that this Court enter judgment in its favor for all damages that Plaintiffs sustain as a consequence of GAIC's failure to honor its obligations under the Policy.

### COUNT V NEGLIGENCE
### (against Lighthouse)

44. The allegations set forth in paragraphs 1 through 43 are incorporated herein by reference.

45. Lighthouse represented to NAT and held itself out as having experience and expertise in the insurance business. Lighthouse provided advice and guidance to NAT in regard to the selection and purchase of insurance policies and also in regard to claim presentation and handling. Based on the relationship between NAT and Lighthouse and the fact that Lighthouse knew NAT was relying on it, Lighthouse owed NAT a duty to assist and provide guidance to NAT in regard to its insurance policies and claims made thereunder, including, but not limited to a duty to provide timely notice to GAIC of NTHP's threat of legal action.

46. Lighthouse breached this duty by failing to alert GAIC of NTHP's threat of legal action after NAT made Lighthouse aware of the threat on April 20, 2004.

47. If this Court finds that GAIC may avoid its contractual obligations based on the Policy's notice provision, Lighthouse's breach of duty will have directly and proximately caused Plaintiffs to sustain damages in the form of the costs and expenses it has incurred to defend itself against the NTHP Complaint and any judgment that Plaintiffs may be obligated to pay that otherwise would be covered under the Policy.

-13-

WHEREFORE, if this Court finds that GAIC may avoid its obligations under the Policy, Plaintiffs respectfully request that this Court enter judgment in its favor for all damages that Plaintiffs sustain as a consequence of Lighthouse's breach of duty.

Dated: April 7, 2006

                                        Roger A. Colaizzi (DC #414025)
                                        Venable LLP
                                        575 7th Street, N.W.
                                        Washington, DC 20004-1601
                                        (202) 344-8051

                                        Stephen E. Marshall
                                        Venable LLP
                                        1800 Mercantile Bank & Trust Bldg.
                                        2 Hopkins Plaza
                                        Baltimore, MD 21201
                                        (410) 244-7400

::ODMA\PCDOCS\BA2DOCS1\287118\2