**EXHIBIT 5
TO COMPLAINT
CASE NO: 1:06CV00650**

Executive Liability Division
Claims Department
1515 Woodfield Road
Suite 500
Schaumburg, IL 60173-5499
847.330.6750 ph
847.330.3750 fax

PO Box 66943
Chicago, IL 60666-0943



January 4, 2006

Victoria C. McCormick
Vice President of Operations and Finance
National Architectural Trust
1906 R Street, NW
Suite 100
Washington, DC 20009

RE:  Insurer: Great American Insurance Company
     Insured: National Architectural Trust ("NAT")
     Policy No.: EPP5642213
     Policy Period: 05/22/2004-05/22/2005
     File No.: 965-586-220-01-1
     National Trust for Historic Preservation v. National Architectural Trust, Inc., et al.

Dear Ms. McCormick:

Thank you for forwarding the requested materials concerning the above-referenced matter. Great American respectfully declines coverage in this matter for the following reasons.

Based upon the materials submitted, we note that, on or about November 8, 2005, National Trust for Historic Preservation ("NTHP") filed suit against NAT and its co-founders, Steven McClain and James Kearns, before the United States District Court, Southern District of New York (referred to herein as "the Federal Complaint"). Specifically, NTHP alleges false and deceptive business practices by NAT and Messrs. McClain and Kearns and damage to NTHP's business reputation. In particular, NTHP disputes NAT's trademark registration and use of the name "National Architectural Trust" as it is comparable to names and marks associated with NTHP. As a result, third parties mistakenly work with NAT under the belief that they are dealing with NTHP. NTHP also alleges unfair competition and misappropriation by NAT and Messrs. McClain and Kearns. NTHP seeks cancellation of NAT's trademark registration, compensatory and punitive damages. We reference NTHP's allegations solely for purposes of our coverage analysis and, in doing so, we do not imply any merit to them.

Victoria C. McCormick
January 4, 2006
Page Two

In addition to the Federal Complaint, we note that NTHP initiated a Cancellation Proceeding before the USPTO against NAT on or about September 15, 2004[1]. In the Cancellation Proceeding, NTHP requests that NAT's trademark registration of the name "National Architectural Trust" be cancelled based upon NTHP's prior trademark registrations of the names "National Trust for Historic Preservation" and "National Trust for Historic Preservation and Design" in connection with services offered by NTHP that are comparable to services offered by NAT. We also note that NTHP filed a Motion to Suspend the [Cancellation] Proceedings pending the outcome of the Federal Complaint and that NAT recently opposed this Motion.

We direct your attention to Section III.K. of the Great American policy which defines a "**Claim**" as:

> (1) any proceeding initiated against an **Insured**, including any appeals therefrom, before (a) any governmental body which is legally authorized to render an enforceable judgment or order for money damages or other relief such **Insured**, or (b) the Equal Employment Opportunity Commission, or any similar governmental body whose purpose is to address employment practices; or (2) any written demand seeking money damages for a **Wrongful Act**.

The Cancellation Proceeding and the Federal Complaint constitute **Claims** under the policy. The Cancellation Proceeding and the Federal Complaint involve the same **Wrongful Act**[2] or **Related Wrongful Acts**, namely, NAT's improper trademark registration and use of the name, National Architectural Trust. Therefore, we are treating these matters as a single **Claim** pursuant to Section V.B. of the policy. This **Claim** shall be deemed to have been made on the earliest date on which any such **Claim** was first made. Therefore, the date on which the **Claim** was <u>first made</u> in this matter is September 15, 2004, which is the approximate date NTHP filed the Cancellation Proceeding against NAT (<u>emphasis</u> added).

For the policy period May 22, 2004 to May 22, 2005, Great American Insurance Company provided Executive Protection and Employment Practices Liability Insurance to the **Insureds** of NAT pursuant to the terms, conditions, provisions of and endorsements, to policy number EPP5642213. The policy provided coverage for **Claims** <u>first made</u> against **Insureds** for **Wrongful Acts** during the **Policy Period**. The policy provided a $1 million aggregate limit of liability subject to retention of $2,500 for each **Claim**. Further, Great American has the right and duty to defend any **Claim** to which this coverage applied.

---

[1] We note that NTHP references a filing date of September 15, 2004, which is not refuted by NAT in any of its' responsive pleadings. However, based upon our review of the materials, it appears that the filing date of the Cancellation Proceeding is on or about January 14, 2005.

[2] All bolded words represent terms defined in the policy.

Victoria C. McCormick
January 4, 2006
Page Three

We direct your attention to Section VII.A. of the policy which states:

> The **Insureds** shall, as a condition precedent of their rights under this Policy, give the **Insurer** notice in writing of any **Claim** made, as soon as practicable (emphasis added).

NAT did not provide notice of the Cancellation Proceeding to Great American and, instead, only provided notice of the Federal Complaint on or about November 14, 2005. Given the Cancellation Proceeding pending against NAT, which included discovery and frequent discussions between NAT and NTHP and the entities' respective counsel, we have no reason to believe that NAT's notice of this matter was provided as soon as practicable as required by the foregoing section of the policy.

Moreover, we note when Mr. Kearns completed the Proposal Form for insurance on behalf of NAT on or about April 20, 2005, for the policy period of May 22, 2005 to May 22, 2006, he marked "No" to the question concerning knowledge of pending proceedings against NAT or Insured Persons and he also marked "No" to the question concerning knowledge of "any fact, circumstance or situation involving the Organization, its Subsidiaries or any proposed Insured which he has reason to believe might result in a future Claim. However, at the time the Proposal Form was completed, the Cancellation Proceeding had been filed and NAT had engaged the services of legal counsel to respond further to NTHP.

We note that NAT has been aware of NTHP's concerns and disagreement with NAT's use of the name "National Architectural Trust" and trademark registration for some time. For example, we note the following from various correspondence exchanged between NAT, NTHP and/or the entities' respective attorneys:

(March 31, 2004 letter from Paul Edmonson, Vice President and General Counsel of NTHP, to James Kearns, President of NAT):

> "...I thought it might be useful, in advance of our meting, to identify several aspects of NAT's operations that are of specific concern to us. Many of these issues and questions continue to be raised by our members, by statewide and local preservation organizations, and by representative of government agencies with whom we work."

> "Such assertions, taken together, appear to suggest that facade easements provide donors with "something for nothing" – an impression that, while appealing to individual donors, may in the long term undermine public support for preservation easements..."

Victoria C. McCormick
January 4, 2006
Page Four

> "The close business relationship between NAT's nonprofit easement preservation program and the for-profit operations of Capitol Preservation Alliance and Springfield Management Services (two companies in which you and NAT co-founder Steven McClain apparently retain personal interests) has led some members of the preservation community to question whether NAT's preservation programs are structured to benefit the personal interests of you and Mr. McClain."

> "Finally, as we have previously expressed, NAT's use of the "National Architectural Trust" name creates confusion among the public as to the true source of NAT's activities and infringes upon the trademark rights of National Trust.... In our more recent conversations, you appeared to indicate a willingness to consider changing NAT's name, and even stated that you had a potential name in mind. We have been patiently waiting for this to occur. While we are willing to work out a transition that would ensure minimal disruption or costs to you, we believe that we have provided ample time for you to consider ways to address this matter; we now require a firm commitment from NAT to resolve this issue to our satisfaction in the very near future."

(April 16, 2004 letter from Paul Edmonson, Vice President and General Counsel of NTHP, to James Kearns, President of NAT):

> "In addition, because we continue to await a resolution of our longstanding claim that the National Architectural Trust is infringing upon the trademark rights if the National Trust, we ask that the meeting be scheduled expeditiously.
>
> If you are not willing to meet, or if we do not receive a written response to or letter on or before April 30, 2004 [sic], you should consider this letter as notice that we are prepared to take action to protect our legal interests."

(April 22, 2004 letter from James Kearns, President of NAT, to Paul Edmonson, Vice President and General Counsel of NTHP):

> "However, you still have not indicated that NTHP intends to do in return for the favor of NAT forgoing its federally registered trademark name and taking on the considerable time, expense and trouble of branding a new name."

(May 13, 2004 letter from Paul Edmonson, Vice President and General Counsel of NTHP, to James Kearns, President of NAT):

Victoria C. McCormick
January 4, 2006
Page Five

> "We remain concerned that NAT's marketing and promotional practices may be leaving potential donors with the impression that they may receive a tax deduction without actually reducing the value of their property."
>
> "We obviously do not agree with your suggestion that National Trust somehow decided after May 2003 to acquiesce to NAT's use of a name that so clearly is confusing to the public because it is so close to our own. We also do not agree – and have never agreed – that NAT's decision to cease using a name that violates our trademark rights requires any quid pro quo on our part. The bottom line is that, having raised the issue with you directly on a number of occasions in the past, NAT has continued to use a name confusingly similar to our in violation of our trademark rights."
>
> "Your statement that, subsequent to our May 2003 meeting, NAT "received a registered trademark registration" belies the fact that the records of the Patent & Trademark Office indicate that NAT filed the trademark application resulting in this registration well before that meeting – when you were clearly cognizant of our objections, and on notice of actual incidences of public confusion resulting from your use of the NAT name."
>
> "We are prepared, however, to pursue all available remedies if an agreement cannot be reached."

(July 20, 2004 letter from Paul Edmonson, Vice President and General Counsel of NTHP, to James Kearns, President of NAT):

> "This letter is to follow up from our discussion last month. You and Mr. Tenebaum had suggested several specific action to be taken by NAT were likely to resolve our stated concerns about NAT, and that the resolution of these concerns would open the possibility that the National Trust might be willing to take a series of steps supporting the activities of NAT. In turn, you indicated that this would induce NAT to change its name and resolve our trademark concerns."

(November 17, 2004 letter from Paul Edmonson, Vice President and General Counsel of NTHP, to James Kearns, President of NAT):

> 'Finally, despite our repeated requests, NAT continues to use a name that is confusing to the public, and that violates the National Trust's trademark rights."

Victoria C. McCormick
January 4, 2006
Page Six

> "Consequently, despite NAT's expression of its' "good faith willingness to change its name," the National Trust has found it necessary to resort to legal action, by filing a petition with the USPTO [U.S. Patent and Trademark Office] to cancel NAT's registration on the Supplement Trademark Register. Our views regarding the validity of NAT's registration are set forth in our petition, which would have been served or will be served on NAT shortly by the USPTO."

(April 25, 2005 letter from Mary Jane Saunders of Venable LLP to Pauline Wen of Fried, Frank, Harris, Shriver & Jacobson LLP - NAT and NTHP's respective counsel):

> "The matter of the dispute between your client, the National Trust for Historic Preservation (NTHP) and my client, the National Architectural Trust (NAT) remains unresolved."

> "While NAT hoped to settle this matter amicably, it is fully prepared to defend the Cancellation proceeding. If the matter is not going to settle amicably, I would like to schedule the deposition of the NTHP on the topic of the allegations of NTHP's petition to cancel NAT's trademark registration."

As a further indication of NAT's knowledge of NTHP's allegations, we note that in its' Response to NTHP's Motion to Suspend [Cancellation] Proceedings, NAT states, "Nothing "new" concerning the conduct of Registrant or its principals was obtained by Petitioner during discovery as has been alleged by Petitioner in its Motion, Petitioner has made these same, false allegations against Registrant for some time, and certainly well before its Petition for Cancellation was filed."

Additionally, under District of Columbia law, Great American is not required to show prejudice prior to declining coverage for NAT's late reporting of this matter.[3] Consequently, we will not address any possible prejudice to Great American as a result of the late notice of this matter. Because notice was not provided as soon as practicable, coverage is not available for the above-referenced matter. Please be advised that Great American assumes no duty to defend any **Insured** in this matter.

Our position declining coverage in this matter is based upon the specific policy provisions referenced herein and is not a waiver of any other coverage issues available to Great American. If NAT believes our analysis is incorrect, we ask that you contact us immediately. We stand ready to further evaluate this matter in light of any additional

---
[3] *Greenway v. Selected Risks Insurance Co.*, 307 A.2d 753, 756 (D.C.1973).

Victoria C. McCormick
January 4, 2006
Page Seven

information.

Please do not hesitate to contact me with any questions.

Very truly yours,
**GREAT AMERICAN INSURANCE COMPANY**

Kathleen T. Van Deven
Senior Claims Attorney
Executive Liability Division
kvandeven@gaic.com
(847) 330-6799

KTV/rm

cc:   Jeffrey S. Tenenbaum, Esq., Venable LLP
      J. Andrew Cooley, Lighthouse Underwriters, LLC